Sheehan & Associates, P.C.
Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck, NY 11021-3104
Telephone: (516) 268-7080
spencer@spencersheehan.com

United States District Court
Eastern District of New York

1:20-cv-05683

Corey Prescott, individually and on behalf of all others similarly situated,

     Plaintiff,

  - against -

Nestlé Holdings, Inc.,

     Defendant

Complaint

  Plaintiff by attorneys alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

  1. Nestlé Holdings, Inc. ("defendant") manufactures, distributes, markets, labels and sells almond milk coffee creamer labeled as "Vanilla" under the Natural Bliss brand ("Product").

  2. The Product is sold in bottles of 32 OZ to consumers from retail and online stores.

  3. The label states "Vanilla," "Natural Flavor," "All Natural" and has images of vanilla beans and a vanilla flower.



4. Contrary to the front label representations of "Vanilla" and "Natural Flavor," the Product is not flavored mainly from vanilla and has no appreciable amount of vanilla.

5. Instead, the Product is flavored mainly from vanillin from non-vanilla sources and as a result, does not taste like vanilla.

6. Vanilla (*Vanilla planifolia Andrews* and *Vanilla tahitenis Moore*) comes from an orchid plant that originated in Mexico where it was first cultivated.

7. The fruit pod of the vanilla flower is the vanilla bean, the raw material for vanilla flavorings.

8. The vanilla bean is heated in the sun and its flavor constituents extracted in alcohol.

9. Vanilla's unique and complex flavor is due to its many odor-active compounds including acids, ethers, alcohols, acetals, heterocyclics, phenolics, hydrocarbons, esters and carbonyls, shown in a sample of vanilla extract.

| MS Scan # | Area Integration | Peak Assignment | Peak Area % |
|---|---|---|---|
| 67 | 16132 | hexanal | 0.0206 |
| 71 | 16235 | butanediol isomer | 0.0207 |
| 81 | 57370 | butanediol isomer | 0.0732 |
| 103 | 36387 | 3-methylbutyric acid | 0.0464 |
| 115 | 33053 | furfural | 0.0422 |
| 141 | 27408 | butanal, diethyl acetal | 0.0350 |
| 262 | 18390 | 3-methylbutanal, diethyl acetal | 0.0235 |
| 281 | 25224 | hexanoic acid | 0.0322 |
| 289 | 2729 | methyl furfural | 0.0035 |
| 299 | 52183 | phenol + trace of benzaldehyde | 0.0665 |
| 349 | 2385 | 1H-pyrrole-2-carboxaldehyde | 0.0030 |
| 379 | 47287 | limonene + benzyl alcohol | 0.0603 |
| 397 | 13835 | heptanoic acid | 0.0176 |
| 409 | 31102 | gamma-hexalactone | 0.0397 |
| 415 | 19338 | p-cresol | 0.0247 |
| 425 | 4470 | hexanal, diethyl acetal | 0.0057 |
| 443 | 287479 | guiaicol | 0.3666 |
| 453 | 5947 | nonanal | 0.0076 |
| 477 | 10000 | phenylethyl alcohol | 0.0128 |
| 496 | 112067 | ? | 0.1429 |
| 505 | 44668 | benzoic acid + octanoic acid | 0.0570 |
| 522 | 4551 | diethyl succinate | 0.0058 |
| 536 | 2461 | ethyl benzoate | 0.0031 |
| 544 | 11769 | 1,2-benzenediol | 0.0150 |
| 555 | 145356 | 2-methoxy-4-methylphenol | 0.1854 |
| 567 | 2537 | methyl salicylate | 0.0032 |
| 587 | 8552 | hydroxy methyl furfural (HMF) | 0.0109 |
| 594 | 5555 | benzeneacetic acid | 0.0071 |
| 605 | 101562 | nonanoic acid | 0.1295 |
| 624 | 6802 | hydroquinone | 0.0087 |
| 631 | 3864 | 4-methoxybenzaldehyde (p-anisaldehyde) | 0.0049 |
| 642 | 6356 | ethyl nonanoate | 0.0081 |
| 653 | 53264 | 4-methoxybenzyl alcohol (p-anisyl alcohol) | 0.0679 |
| 676 | 14481 | cinnamyl alcohol | 0.0185 |
| 685 | 16094 | 3-hydroxybenzyl alcohol | 0.0205 |
| 718 | 12188570 | 3-hydroxybenzaldehyde + 4-ethoxymethylphenol | 15.5440 |
| 751 | 122634 | methyl cinnamte | 0.1564 |
| 759 | 60715743 | vanillin | 77.4301 |
| 796 | 90669 | methyl-p-methoxybenzoate (methyl paraben) | 0.1156 |
| 809 | 2228588 | vanillyl ethyl ether + trace of 4-hydroxy-3-methoxybenzyl alcohol | 2.8421 |
| 832 | 224829 | p-hydroxybenzoic acid | 0.2867 |
| 839 | 37335 | acetovanillone | 0.0476 |
| 892 | 950342 | vanillic acid | 1.2120 |
| 909 | 405589 | 3,4-dihydroxybenzaldehyde | 0.5172 |
| 935 | 82429 | 3,4-dihydroxy-5-methoxybenzaldehyde | 0.1051 |
| 954 | 6212 | ethyl homovanillate | 0.0079 |
| 975 | 78148 | syringealdehyde | 0.0997 |
| 1266 | 14130 | ethyl palmitate | 0.0180 |
| 1518 | 21477 | ethyl linoleate | 0.0274 |
| | 78413588 | Total | 100.0000 |

10. While vanillin (77.4301 Peak Area %) plays a significant role, it contributes between one-quarter and one-third of the overall flavor/aroma impact of vanilla.

11. The popularity of vanilla in the 19th century led to the isolation of the most predominant flavor component, vanillin.

12. However, vanillin separated from the rest of the vanilla bean does not constitute vanilla flavor.

13. Sensory evaluation of vanillin is mainly sweet, with a lackluster "chemical-like" taste and odor because it lacks the other molecules in vanilla.

14. Vanillin must be accompanied by other compounds to produce the familiar flavor and aroma consumers know as vanilla.

15. The availability of low-cost vanillin resulted in foods purporting to contain vanilla, which either contained no vanilla or a trace or de minimis amount, boosted by synthetic vanillin.

16. Consumer and industry groups have long sought to prevent this deception, where consumers are sold a food labeled as "vanilla" only to discover too late it lacks the richness and layered taste only provided by vanilla beans.

17. The earliest effort to prevent fraud in vanilla products was the U.S. Pharmacopeia standard, which required a specific weight of vanilla beans as the source for vanilla extract.

18. The focus was on the weight of actual vanilla beans, because this would prevent the addition of vanillin to a small amount of vanilla beans.

19. Consumer deception continued through the first half of the 20th century, with companies labeling their foods as "vanilla" which were little more than vanillin with caramel coloring.

20. Congress authorized regulations to prevent such deceptive labeling of foods flavored with vanilla, and for over fifty (50) years, most companies adhered to these industry standards.

21. This meant consumers were told where a product purported to be flavored as "vanilla" but contained a trace or de minimis amount of vanilla, boosted by vanillin, because it was labeled as imitation vanilla or artificially flavored.

22. In 2018, in response to a surge in fraudulently labeled vanilla flavored foods, The Flavor and Extract Manufacturers Association of the United States ("FEMA") urged companies to return to truthfully labeling vanilla foods so consumers would not be misled by artificial vanilla flavors.[1]

23. One of the misleading practices highlighted by the flavor industry and the FDA was labeling a food with the terms "Vanilla" and "Natural Flavor" when the amount of vanilla was de minimis and/or the food's vanilla taste was provided by non-vanilla vanillin.

24. This is misleading because consumers will understand "Vanilla" and "Natural Flavor" as meaning a product is flavored with natural vanilla flavor, from the vanilla bean.

25. Defendant's ingredient list identifies "Natural Flavor" but this fails to clarify the misleading front label representations.



**INGREDIENTS:** ALMOND MILK (WATER, ALMONDS), CANE SUGAR, COCONUT OIL, PEA PROTEIN, BAKING SODA, NATURAL FLAVOR, SEA SALT, GELLAN GUM, GUAR GUM (FROM THE GUAR PLANT).

26. "Natural Flavor" is a technical term for an ingredient which is a mix of flavors and does not consist only of vanilla.

---

[1] John B. Hallagan and Joanna Drake, FEMA, "Labeling Vanilla Flavorings and Vanilla-Flavored Foods in the U.S.," Perfumer & Flavorist, Vol. 43 at p. 46, Apr. 25, 2018 ("Hallagan & Drake"); FEMA is the trade group for the flavor industry.

27. However, consumers are unable to know how much, if any vanilla is part of the Natural Flavor ingredient.

28. Nevertheless, lab testing reveals an abnormal excess of vanillin relative to the odor-active compounds in authentic vanilla, an indicator of artificial vanillin.

29. Consumers seek to avoid foods with flavors from sources other than their characterizing ingredients – orange flavor from oranges and vanilla flavor from vanilla.

30. The reasons for these preferences include health and nutrition purposes, because they are highly processed with chemical additives in laboratories instead of made through simple techniques like alcohol extraction.

31. Because vanillin is responsible for between one-quarter (25%) and one-third (33%) of the overall flavor/aroma impact of vanilla, the added vanillin skews the balance of flavor compounds which consumers associate with vanilla from vanilla beans.

32. According to FEMA and the FDA, it is misleading to label a food such as the Product "Vanilla" accompanied by the term "Natural Flavor," with the image of the vanilla beans and vanilla flower because this implies the Product is naturally flavored with vanilla, even though the flavor is not derived from vanilla beans. FDA Letter to Richard Brownell, February 25, 2016.

33. Even if the Product purports to contain added vanillin described as "natural vanillin," such an ingredient does not exist.

34. This is because natural vanillin is only present as part of vanilla, instead of separated.

35. According to FEMA and the FDA, any non-vanilla flavor compounds that simulate vanilla but are not derived from vanilla beans considered artificial flavors that simulate the natural characterizing flavor.

36. This is consistent with the vanilla standards, which identify vanillin as an artificial

flavor when used with vanilla extract. 21 C.F.R. § 169.180(b).

37. Since the Product's flavoring is predominantly from non-vanilla and its characterizing flavor is vanilla, the food must be identified as artificially flavored or "contains artificial flavor."[2] 21 C.F.R. § 101.22(i).

38. By omitting "artificially flavored" from the front label, consumers are not told that the taste is from added vanillin.

39. By using the term "natural flavor" with "Vanilla" on the front label, consumers are told the Product has a vanilla taste from vanilla ingredients.

40. The ingredient listing of "Natural Flavor" is misleading because it does not identify vanillin as an ingredient nor discloses the presence of artificial flavors such as vanillin.

41. Vanillin alone cannot provide vanilla flavor because it lacks the above-described odor-active compounds present in vanilla.

42. The Product's flavoring lacks the complexity and flavor notes associated with vanilla because vanillin has never been synonymous with vanilla.

43. Defendant knows consumers will pay more for the Product because the front label states vanilla and "Natural Flavor" instead of "artificially flavored" or "does not taste like real vanilla."

44. Consumers are unable to know that the "natural flavor" refers to vanillin.

45. Defendant's omission and failure to disclose these facts is deceptive and misleading to consumers who want a vanilla flavored product that contains flavoring mainly or exclusively from vanilla beans and tastes like vanilla.

46. Defendant's branding and packaging of the Product is designed to – and does –

---

[2] Hallagan at 48.

deceive, mislead, and defraud plaintiff and consumers.

47. Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

48. The value of the Product that plaintiff purchased and consumed was materially less than its value as represented by defendant.

49. Had plaintiff and class members known the truth, they would not have bought the Product or would have paid less for them.

50. As a result of the false and misleading labeling, the Product is an sold at a premium price, approximately no less than $5.49 per 32 OZ compared to other similar products represented in a non-misleading way, and higher than the price of the Product if it were represented in a non-misleading way.

## Jurisdiction and Venue

51. Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2)

52. Under CAFA, district courts have "original federal jurisdiction over class actions involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal diversity[.]" *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 141 (2d Cir. 2013).

53. Plaintiff Corey Prescott is a citizen of New York.

54. Defendant Nestlé Holdings, Inc. is a Delaware corporation with a principal place of business in Arlington, Arlington County, Virginia and is a citizen of Virginia.

55. "Minimal diversity" exists because plaintiff Corey Prescott and defendant are citizens of different states.

56. Upon information and belief, sales of the Product exceed $5 million during the

8

applicable statutes of limitations, exclusive of interest and costs.

57. Venue is proper in this because Plaintiff Corey Prescott resides in this District and a substantial part of the events or omissions giving rise to the claim occurred here.

58. Venue is further supported because many class members reside in this District.

Parties

59. Plaintiff Corey Prescott is a citizen of Brooklyn, Kings County, New York.

60. Defendant Nestlé Holdings, Inc. is a Delaware corporation with a principal place of business in Arlington, Virginia, Arlington County.

61. During the relevant statutes of limitations for each cause of action alleged, plaintiff purchased the Product within his district and/or State for personal and household consumption and/or use in reliance on the representations of the Product.

62. Plaintiff purchased the Product on more than one occasion, including on or around June 19, 2020 at stores including but not necessarily limited to Foodtown, 9105-27 3rd Ave, Brooklyn, NY 11209.

63. Plaintiff bought the Product at or exceeding the above-referenced price because he liked the product for its intended use and relied upon the front label claims, expected a vanilla taste, and that such taste would come exclusively and/or predominantly from vanilla beans and did not expect a taste of vanillin, provided by artificial vanilla flavors.

64. Plaintiff bought the Product at or exceeding the above-referenced price because he liked the product for its intended use and relied upon the front label claims, expected a vanilla taste, and that such taste would come exclusively and/or predominantly from vanilla beans and did not expect a taste of vanillin, provided by artificial vanilla flavors.

65. Plaintiff was deceived by and relied upon the Product's deceptive labeling.

66. Plaintiff would not have purchased the Product in the absence of Defendant's

misrepresentations and omissions.

67. The Product was worth less than what Plaintiff paid for it and he would not have paid as much absent Defendant's false and misleading statements and omissions.

68. Plaintiff intends to, seeks to, and will purchase the Product again when he can do so with the assurance that Product's labels are consistent with the Product's components.

## Class Allegations

69. The class will consist of all purchasers of the Product who reside in New York during the applicable statutes of limitations.

70. Plaintiff seeks class-wide injunctive relief based on Rule 23(b) in addition to a monetary relief class.

71. Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

72. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

73. Plaintiff is an adequate representative because his interests do not conflict with other members.

74. No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

75. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

76. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

77. Plaintiff seeks class-wide injunctive relief because the practices continue.

New York General Business Law ("GBL") §§ 349 & 350
(Consumer Protection Statutes)

78. Plaintiff incorporates by reference all preceding paragraphs.

79. Plaintiff and class members desired to purchase and consume products which were as described and marketed by defendant and expected by reasonable consumers, given the product type.

80. Defendant's acts and omissions are not unique to the parties and have a broader impact on the public.

81. Defendant misrepresented the substantive, quantitative, qualitative, compositional and/or organoleptic attributes of the Product.

82. Despite the claim it does not have artificial flavors, ethyl vanillin, vanillin and piperonal are artificial flavors.

83. The amount and proportion of the characterizing component, vanilla, has a material bearing on price and consumer acceptance of the Product.

84. Plaintiff expected the Product to have more vanilla than it did and did not expect added vanillin since the label said "natural flavor."

85. Plaintiff expected a vanilla tasting product which he did not receive.

86. Plaintiff relied on the statements, omissions and representations of defendant, and defendant knew or should have known the falsity of same.

87. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Negligent Misrepresentation

88. Plaintiff incorporates by reference all preceding paragraphs.

89. Defendant misrepresented the substantive, quantitative, qualitative, compositional

and/or organoleptic attributes of the Product.

90. The amount and proportion of the characterizing component, vanilla, has a material bearing on price and consumer acceptance of the Product.

91. Plaintiff expected the Product to have more vanilla than it did and did not expect added vanillin since the label said "natural flavor."

92. Plaintiff expected a vanilla tasting product which he did not receive.

93. Defendant had a duty to disclose the non-vanilla, artificial flavors and tell consumers the Product did not taste like vanilla because it lacked sufficient amounts of the compounds which provide the characteristic vanilla taste.

94. This duty is based on defendant's position as an entity which has held itself out as having special knowledge and experience in the production, service and/or sale of the product type.

95. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant, a well-known and respected brand or entity in this sector.

96. Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Product.

97. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

### Breaches of Express Warranty, Implied Warranty of Merchantability and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

98. Plaintiff incorporates by reference all preceding paragraphs.

99. The Product was manufactured, labeled and sold by defendant or at its express directions and instructions, and warranted to plaintiff and class members that they possessed substantive, quality, organoleptic, and/or compositional attributes it did not.

100. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

101. This duty is based, in part, on defendant's position as one of the most recognized companies in the nation in this sector.

102. Plaintiff provided or will provide notice to defendant, its agents, representatives, and their employees.

103. Defendant received notice and should have been aware of these misrepresentations due to numerous complaints by consumers to its main office over the past several years regarding the Product, of the type described here.

104. The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable because plaintiffs expected a product that contained enough vanilla relative to any other flavorings in the Product to taste like vanilla.

105. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Fraud

106. Plaintiff incorporates by reference all preceding paragraphs.

107. Defendant misrepresented the substantive, quality, compositional and/or organoleptic attributes of the Product.

108. The amount and proportion of the characterizing component, vanilla, has a material bearing on price and consumer acceptance of the Product.

109. Plaintiff expected the Product to have more vanilla than it did and did not expect added vanillin.

110. Plaintiff expected a vanilla tasting product which he did not receive.

111. Defendant's fraudulent intent is evinced by its failure to accurately identify the Product on the front label and ingredient list, when it knew its statements were neither true nor accurate and misled consumers.

112. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

### Unjust Enrichment

113. Plaintiff incorporates by reference all preceding paragraphs.

114. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

### Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;
2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;
3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;
4. Awarding monetary damages and interest pursuant to the common law and other statutory claims;
5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated: November 22, 2020

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck NY 11021-3104
Tel: (516) 268-7080
Fax: (516) 234-7800
*spencer@spencersheehan.com*
E.D.N.Y. # SS-8533
S.D.N.Y. # SS-2056

1:20-cv-05683
United States District Court
Eastern District of New York

Corey Prescott, individually and on behalf of all others similarly situated,

Plaintiff,

- against -

Nestlé Holdings, Inc.,

Defendant

Complaint

```
Sheehan & Associates, P.C.
 60 Cuttermill Rd Ste 409
 Great Neck NY 11021-3104
    Tel: (516) 268-7080
    Fax: (516) 234-7800
```

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated: November 22, 2020

                                                                                           /s/ Spencer Sheehan
                                                                                             Spencer Sheehan